IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES D. HOOD, | : |
| | : |
| Plaintiff, | : |
| | : Case No. 01-CV-454 |
| v. | : |
| | : |
| RONALD T. KELLER, et al., | : JUDGE ALGENON L. MARBLEY |
| | : |
| Defendants. | : Magistrate Judge Kemp |
| | : |

**OPINION AND ORDER**

**I.  INTRODUCTION**

This matter comes before the Court on Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment.  For the following reasons, the Court **GRANTS** Defendants' Cross-Motion for Summary Judgment, finding Plaintiff's requests for injunctive and declaratory relief **MOOT** [Docket No. 35].  The Court **DENIES** Plaintiff's Motion for Summary Judgment [Docket Nos. 33 and 34].

**II.  FACTS AND BACKGROUND**

The Capitol Square Review and Advisory Board ("CSRAB") is the statutorily-appointed manager of Ohio's Statehouse grounds, which include the state capitol buildings and the surrounding ten-acre area.  *See* OHIO REV. CODE § 105.41(E)(2) (stating that CSRAB has the sole authority to regulate all uses of the Statehouse grounds).  Pursuant to its powers under Ohio Rev. Code § 105.41, CSRAB promulgated a rule requiring that all persons who wish to use the Statehouse grounds first obtain a permit for doing so.  Specifically, Ohio Adm. Code § 128-4-02 provides, in relevant part:

>Capitol buildings or grounds are available for use by the public for the purpose of governmental business, public meetings for free discussion of public questions, or for activities of broad public purpose, provided the authorized procedure has been followed and appropriate approvals have been received . . . .

OHIO ADM. CODE § 128-4-02. The "authorized procedure" and "appropriate approvals" referenced by § 128-4-02 require persons seeking permits to submit a written request "no less than fifteen and no more than one hundred eighty days prior to the event." OHIO ADM. CODE § 128-4-03(A)-(B). Additionally, the State charges $20.00 per permit.[1] *Id*.

Plaintiff, James D. Hood II, is a Christian pastor who, since 1982, has regularly expressed his religious beliefs on the Statehouse grounds through oral communication and distribution of written literature. On May 18, 2000, Pastor Hood began to preach without a permit and, later that day, criminal charges were filed against him in the Franklin County Municipal Court, alleging that he had committed the offense of Criminal Trespass, in violation of Ohio Revised Code § 2911.21(A)(2).[2]

Pastor Hood filed a motion to dismiss the state criminal charges in the Franklin County Municipal Court, arguing that the rules requiring a permit for use of the Statehouse grounds, as set forth in Ohio Rev. Code § 2911.21(A)(2) and Ohio Adm. Code 128-1 *et seq.*, were unconstitutional, in violation of his First and Fourteenth Amendment rights to due process, free

---

[1] The fee and the fifteen day deadline can be waived for "good cause shown." OHIO ADM. CODE § 128-4-03.

[2] Ohio Rev. Code § 2911.21(A)(2) states:
No person, without privilege to do so, shall . . . [k]nowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard.

speech, and free exercise of religion. Pastor Hood also argued that the statutes violated his rights under the Ohio Constitution. On November 17, 2000, Judge Michael T. Brandt of the Franklin County Municipal Court denied Pastor Hood's motion to dismiss, holding that the permit process was constitutional. *See City of Columbus v. Hood*, No. 2000-CRB-012508 (Franklin Cty. Mun. Ct. Nov. 17, 2000). On November 29, 2000, a jury found Pastor Hood guilty of criminal trespass, and the Municipal Court sentenced him with a fine of $100.00. Pastor Hood appealed the Municipal Court's ruling, but then voluntarily dismissed his appeal.

On May 16, 2001, Pastor Hood filed a Complaint with this Court against Ronald Keller, in his official capacity as the Executive Director of the CSRAB; Richard Finan, in his official capacity as the Chairman of the CSRAB; and Kenneth Morckel, in his official capacity as the Superintendent of the Ohio State Highway Patrol. The Complaint alleged that the permit requirements were unconstitutionally overbroad, vague, and discriminatory in violation of his right to free speech and free exercise under the First and Fourteenth Amendments to the United States Constitution and violated his rights under Art. 1, § 7 and Art. 1, § 11 of the Ohio Constitution.[3] Plaintiff sought declaratory relief, injunctive relief, and costs and attorney's fees.[4] This Court dismissed the matter, holding that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine.[5]

---

[3]Plaintiff's Complaint also set forth claims of malicious prosecution and false arrest. Plaintiff voluntarily withdrew his malicious prosecution claim and this Court dismissed the false arrest claim.

[4]Plaintiff's Complaint also sought compensatory damages, but that request was voluntarily withdrawn in the Plaintiff's Memorandum Contra Defendants' Motions to Dismiss.

[5]Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction to review state court judgments. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Company,* 263 U.S. 413, 414 (1923). The *Rooker-Feldman* doctrine prevents a

On appeal, the Sixth Circuit reversed, holding that *Rooker-Feldman* was inapplicable because the doctrine "does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely 'a general challenge to the constitutionality of the state law applied in the state action,' rather than a challenge to the law's application in a particular state case." *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) (citing *Tropf v. Fid. Nat'l. Title Ins. Co.*, 289 F.3d 929, 936 (6th Cir. 2002). In other words, because Pastor Hood, in his Complaint, sought relief from the "continued threat of enforcement of Chapter 128-4 permit requirement" and *not* from his state court criminal trespass conviction, the *Rooker-Feldman* did not apply. *Id*. at 598 ("Because Hood does not seek to have the district court overturn his November 29, 2000, conviction in Franklin County Municipal Court, the *Rooker-Feldman* doctrine is inapplicable to this lawsuit."). The Sixth Circuit remanded the case back to this Court to determine whether the lawsuit should be dismissed on another ground, such as preclusion. *Id*. at 599. ("Although the fact that Hood raised the same constitutional issue in the state court proceeding could potentially justify dismissing this lawsuit in whole or in part, we . . . decline to reach these issues and instead leave them for the district court to resolve on remand).

On remand, this Court, pursuant to a joint motion, stayed the case pending disposition of a related Sixth Circuit case, *Parks v. Finan*, which concerned an almost identical constitutional challenge to the same permit scheme. On September 29, 2004, the *Parks* court held that the "permitting scheme as it presently exists is invalid with respect to individuals" and affirmed the

---

finding of subject matter jurisdiction in federal court when the district court is presented with a claim that either was actually litigated in the state court, or is "inextricably intertwined" with the judgment of the state court. *Anderson v. Charter Twp. of Ypsilanti,* 266 F.3d 487, 492 (6th Cir.2001) (citing *Feldman,* 460 U.S. at 486-87).

lower court's injunction to the extent that it prevented the state from enforcing the permitting scheme against individuals. *Parks v. Finan*, 385 F.3d 694, 700 (6th Cir. 2004) ("The injunction is warranted, however, because application of the permitting scheme to individuals like Parks, who may be speaking, wearing signs, and/or leafletting, unconstitutionally burdens free expression in violation of the First Amendment.").

In light of the ruling in *Parks*, Plaintiff has moved for judgment as a matter of law with regard to his claims for (1) declaratory relief stating that Chapter 128-4 and §105.41 of the Ohio Administrative Code are unconstitutional as applied to Plaintiff's activities in this case; (2) injunctive relief enjoining Defendants from applying the permit scheme to his speech, including preaching and distribution of religious tracts; and (3) an award of reasonable costs and expenses of the action pursuant to 42 U.S.C. § 1988.

Defendants first argue that Pastor Hood lacks standing to challenge the permit scheme's application to his speech because his *prior* exposure to illegal conduct does not establish a *present* case or controversy if unaccompanied by continuing adverse effects. Second, Defendants contend that this Court cannot issue a prospective injunction because Plaintiff's case was rendered moot by the Sixth Circuit's injunction in *Parks*. Finally, Defendants argue that Pastor Hood is collaterally estopped from receiving any federal relief because he has already raised - or should have raised - the underlying claims in state court.

### III. ANALYSIS

Because collateral estoppel is a defense, and "not a limitation on jurisdiction," *Buckley v. Illinois Judicial Inquiry Bd.*, 997 F.2d 224 (7th Cir. 1993), the Court first considers the threshold

jurisdictional issues raised by Defendants, mootness and standing, as applied to Plaintiff's requests for injunctive and declaratory relief.

### 1. Injunctive Relief

Defendants assert that because the Sixth Circuit has already issued an injunction and because the State has refrained from enforcing the permit scheme as applied to individuals, the instant case no longer meets the "case or controversy" requirement contained in Article III, § 2 of the United States Constitution and thus, this Court does not have jurisdiction. Plaintiff counters that because Defendants have neither modified nor repealed the offending statute, enforcement could theoretically resume at any time, thereby making Plaintiff's claims not moot.

"A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *Cleveland Branch, N.A.A.C.P. v. City of Parma,* 263 F.3d 513, 530 (6th Cir. 2001) (citing *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992)). In this Circuit, "the test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *McPherson v. Michigan High Sch. Athletic Ass'n Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (internal quotation marks and citations omitted). The "heavy burden" of demonstrating mootness falls on the party asserting it. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

Where a party has voluntarily ceased conduct because of a court order, as Defendants have done here, the underlying case will not be rendered moot unless "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 543 (6th Cir. 2004) (citing *Laidlaw*, 528 U.S. at 189). This rule "is meant to protect a party from an opponent

who seeks to defeat judicial review by temporarily altering its behavior." *Id*. (citing *City News & Novelty, Inc. v. City of Waukesha,* 531 U.S. 278, 284 n.1 (2001)).

To determine whether the allegedly wrongful behavior cannot reasonably be expected to recur, courts accord substantial weight to the desisting party's assurances, or lack thereof, that the relevant conduct has permanently ceased.  For example, in *Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003), the Attorney General of Michigan ("AG") issued a Notice of Intended Action ("NIA") to Ammex.  This NIA essentially provided Ammex with a warning that if it continued to falsely advertise its gas as tax-free, the AG would file a lawsuit under the Michigan Consumer Protection Act ("MCPA").  *Id*. at 701.  Upon receiving the NIA, Ammex filed a declaratory judgment action against the Attorney General alleging that the MCPA was preempted by federal law and, in any event, violated the Commerce Clause.  While Ammex's lawsuit was pending, the AG withdrew the NIA, and the district court declared Ammex's suit moot.  The Sixth Circuit reversed, reasoning that the AG had failed to make it "absolutely clear that the allegedly wrongful conduct could not be expected to recur," noting that the withdrawal stated that an NIA would not reissue *unless* certain "changed circumstances" occurred, namely, a final judgment against Ammex in a pending tax case.  *Id*. at 702, 705.  Because these changed circumstances were not unlikely, the court found Ammex's claims not moot.  *Id*. at 705-06; *see also City of Mesquite v. Aladdins's Castle, Inc.*, 455 U.S. 283, 289 (1982) (holding that the defendant's voluntary repeal of allegedly unconstitutional legislation did not moot a claim for injunctive relief because the legislators intended to reenact the same legislation upon reversal of the district court's injunction); *Vitek v. Jones*, 445 U.S. 480, 487 (1980) (holding a case not moot because the State of Nebraska had voiced its intent to appeal the district court's injunction, which

enjoined the State from transferring prison inmates to a psychiatric hospital without due process).

Defendants, through their written assurances and recent actions, have adequately assured this Court that the State's enforcement of the permit scheme cannot "reasonably be expected to recur." *Am. Canoe Ass'n, Inc.*, 389 F.3d at 543. As Defendants concede in their papers, "the injunction in the Parks case absolutely precludes the State Defendants from enforcing the current permitting scheme against any individual speaker." (Def. Rep. at 8). Moreover, Defendant Ronald Keller, Executive Director of CSRAB, swore in an affidavit that "CSRAB understands that a federal injunction has a binding legal force on it, and has no intention in the future of enforcing the current permit scheme against individual speakers unless the injunction is dissolved." *See* Keller Aff. ¶ 6. The injunction, however, will not be dissolved because, as Defendants' papers emphasized, "State Defendants have no plans to appeal the case any further, and the deadline for filing a petition for certiorari in the United States Supreme Court [has] pass[ed]."[6] (Def. Mot. Summ. Judg. at 12). Additionally, since the injunction's issuance, Pastor Hood has, in fact, resumed preaching on Statehouse grounds without consequence. *See* Trimble Aff. ¶ 5 (documenting that on July 7, 2003, approximately thirty days after the injunction issued, he observed Pastor Hood preaching on Statehouse grounds).[7]

---

[6] Supreme Court Rules 13.1 and 13.3 provide that a party has ninety calendar days "from the date of entry of judgment, order or opinion, or the date a timely led petition for rehearing is denied, or a subsequent judgment based on the grant of the petition for rehearing, within which to file with the Clerk a petition for a writ of certiorari." In light of the Sixth Circuit's September 29, 2004 decision in *Parks*, the deadline for filing a petition for writ of certiorari has long passed.

[7] Dennis Trimble is the Deputy Director for Buildings and Grounds of CSRAB.

Contrary to Plaintiff's characterization, the injunction's scope is not limited to Mr. Parks; rather, it applies to all individuals, including Pastor Hood. *See Parks v. Finan*, 385 F.3d at 698 ("[T]he permitting scheme as it presently exists is invalid with respect to individuals"). An injunction of this nature carries its preclusive powers beyond the case from which it stems. In *Putnam v. Davies*, No. 97-3365, 1998 WL 344075, at *2-*3 (6th Cir. May 26, 1998), the plaintiff sued to have a state vehicle seizure statute declared unconstitutional. While the case was pending, the Ohio Supreme Court enjoined the State from applying the same statute to *the particular defendant* who challenged its constitutionality in that court. *Id*. at *2. The Sixth Circuit found the plaintiff's suit was not moot because, in part, the Ohio Supreme Court's injunction failed to protect the public, generally, from the enforcement of an unconstitutional statute; instead, the Ohio Supreme Court "merely concluded that the particular application against the defendant *in that case* was unconstitutional." *Id*. at *3 (emphasis added). In the instant case, however, the court in *Parks* made quite clear that the injunction prohibited enforcement of the permitting scheme as to all individuals, not only to Mr. Parks. *Parks*, 385 F.3d at 698; *cf. Blackard v. Memphis Area Med. Center for Women*, 262 F.3d 568, 574 (6th Cir. 2001) (finding an injunction in a related case enjoined not only the Administrative Director of the Courts, but also "those persons in active concert or participation" with him) (citing FED. R. CIV. P. 65(d));  In sum, the Court finds that the injunction affirmed by *Parks*, in conjunction with Defendant's representations that it will abide by the order, adequately protect Pastor Hood from the unconstitutional application of the permit scheme, thus rendering the instant request for injunctive relief moot.

### 2. Declaratory Relief

Even where injunctive relief is inappropriate, the Court must still consider Plaintiff's request for declaratory relief. *See Steffel v. Thompson*, 415 U.S. 452, 462-63 (1974) (holding that injunctive relief and declaratory relief must not be treated as a single issue). Specifically, Pastor Hood asks for declaratory relief stating that the permit scheme is unconstitutional as applied to Plaintiff's activities in this case. Defendants argue that Plaintiff's request for declaratory relief is moot. This Court agrees.

To determine whether a request for declaratory relief is moot, "the question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (internal quotation marks and citation omitted); *see Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 459 (6th Cir. 2004) (citing *McCorkle* with approval) (citation omitted).

The Court holds that Plaintiff's claim for declaratory relief moot, and finds the Supreme Court's opinion in *Golden v. Zwickler*, 394 U.S. 103 (1969), instructive. There, the plaintiff, Mr. Zwickler, had been convicted of violating a New York Penal Law that prohibited distribution of anonymous handbills. Mr. Zwickler's handbills had criticized a certain Congressman running in the 1964 congressional election. Although the conviction was eventually reversed on state law grounds, Mr. Zwickler brought suit in federal court in 1966 asking for a declaratory judgment that the state law violated the First Amendment. Mr. Zwickler's complaint stated that he intended to distribute the same handbills when the Congressman ran for reelection; however, the Supreme Court learned at oral argument that the Congressman had since left the House of

Representatives to sit on the Supreme Court of New York. In finding Mr. Zwickler's request for declaratory judgment moot, the Supreme Court first stressed that no similar prohibition on distribution applied to State Supreme Court elections. The Court then concluded that Mr. Zwickler's request for declaratory judgment was moot because he failed to present a "specific live grievance," stating as follows:

> [I]t was wholly conjectural that another occasion might arise when Zwickler might be prosecuted for distributing the handbills referred to in the complaint. His assertion in his brief that the former Congressman can be 'a candidate for Congress again' is hardly a substitute for evidence that this is a prospect of 'immediacy and reality.'"

*Zwickler*, 394 U.S. 103, 109. Likewise, the Court finds Plaintiff's argument that "another occasion might arise" when Plaintiff is prosecuted for his speech to be too speculative in light of the State Defendants' representations that they will abide by the injunction. As stated by the Supreme Court in *Zwickler*, "'A hypothetical threat is not enough.'" *Id*. at 103 (citing *United Public Workers of Am. v. Mitchell*, 330 U.S. 75, 88-89 (1947)). In short, the Court finds that the facts alleged, under all the circumstances, show no substantial controversy of "sufficient immediacy and reality" to warrant the issuance of a declaratory judgment. *Super Tire Eng'g Co.*, 416 U.S. at 122.[8]

---

[8]Because Pastor Hood's requests for equitable relief are barred by the mootness doctrine, the Court need not reach the standing inquiry.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Cross-Motion for Summary Judgment and finds Plaintiff's request for injunctive and declaratory relief **MOOT**.  The Court **DENIES** Plaintiff's Motion for Summary Judgment.   This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

        **s/Algenon L. Marbley**
        **ALGENON L. MARBLEY**
        **United States District Court Judge**

**DATED: September 29, 2005**